```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF MISSISSIPPI
                NORTHERN DIVISION


THE ESTATE OF LORETTA WILLIAMS,
WILLIE DEERING, ADMINISTRATOR;
THE ESTATE OF ANNIE GRACE
WARNSLEY-BESTER, WILLIE DEERING,
ADMINISTRATOR; THE ESTATE OF KATRINA
WARNSLEY, WILLIE DEERING, ADMINISTRATOR;
AND GENEVA BURKS
                                                    PLAINTIFFS

VS.                          CIVIL ACTION NO. 3:15CV407TSL-RHW

TOM VILSACK, SECRETARY, UNITED
STATES DEPARTMENT OF AGRICULTURE                     DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Tom Vilsack, Secretary, United States Department of Agriculture (USDA) to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). Plaintiffs Geneva Burks and Willie Deering, as Administrator of the Estates of Loretta Williams, Annie Grace Warnsley-Bester and Katrina Warnsley, have responded in opposition to the motion. The court, having considered the memoranda of authorities, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

Background

Between 1997 and 2000, African–American, Native American, Hispanic, and female farmers filed four virtually identical class

action lawsuits alleging that the USDA routinely discriminated on the basis of race, ethnicity and gender in the administration of farm benefit programs and failed to investigate the claims of farmers who filed complaints with the USDA based on such conduct. Cantu v. United States, 565 F. App'x 7, 8-9 (D.C. Cir. 2014).[1] The first suit, Pigford v. Glickman (Pigford I), was brought by African-American farmers in August 1997; Native American farmers filed suit in 1999, Keepseagle v. Veneman, No. 99-03119, 2001 WL 34676944, at *1 (D.D.C. Dec. 12, 2001).  Both cases were certified as class actions, and ultimately, the government agreed to settle these cases on essentially the same terms.  Broadly speaking, consent decrees entered in each case provided for a two-track dispute resolution system:  "Track A" was designed to provide a "virtually automatic" payment of $50,000 for farmers who could provide "substantial evidence" of discrimination, while "Track B" offered claimants uncapped damages if they could prove discrimination by a preponderance of the evidence.  See In re Black Farmers Discrimination Litig., 856 F. Supp. 2d 1, 33 (D.D.C. 2011); Cantu, 565 Fed. App'x 7, 8 (D.C. Cir. 2014) (describing

---

[1] As the court explained in Cantu v. United States, Cantu, these lawsuits were brought after a USDA internal investigation concluded that the agency had engaged in decades of discrimination and had failed to handle complaints of such discrimination appropriately, all of which caused minority and female farmers to lose "significant amounts of land and potential farm income." 565 F. App'x 7, 8 (D.C. Cir. 2014).

2

Keepseagle settlement and citing Statement by the President on Settlement Agreement in the Native American Farmers Lawsuit Against USDA (Oct. 19, 2010), http://www.whitehouse.gov/the-press-office/2010/10/19/statement-president-settlement-agreement-native-american-farmers-lawsuit).

In 2000, a number of Hispanic and female farmers filed two separate lawsuits alleging discrimination in the administration of the USDA's farm loan programs.  See Garcia v. Veneman, Civ. A. No. 00-2445(JR) (D.D.C.) (Hispanic farmers); Love v. Vilsack, Case No. 1:00CV02502 (D.D.C.) (female farmers).  The plaintiffs in Garcia and Love sought to have their cases certified as class actions on behalf of themselves and prospective Hispanic and female farmers nationwide who were discriminated against in attempting to obtain farm loans or loan servicing from 1981 to December 31, 1996 and from October 19, 1998 to the present.  In both cases, however, the court denied the plaintiffs' motions for class certification.  See Garcia, 444 F.3d 625 (D.C. Cir. 2006); Love, 439 F.3d 723 (D.C. Cir. 2006).  Despite this, in January 2012, the government established an administrative claims resolution process for claims of Hispanic and female farmers.  However, while the framework established for these claims "resembled the Pigford and Keepseagle processes in broad strokes, the Framework differed in several respects, including the absence of judicial supervision or class counsel, less monetary relief, a more onerous burden of proof, and

3

relief for a more limited category of claims." <u>Cantu</u>, 565 F. App'x at 9. In light of the differences, the plaintiffs in <u>Love</u> amended their complaint to allege that the voluntary administrative claims process that the USDA had established to adjudicate the claims of female and farmers was "more onerous" than the "claims programs offered to similarly situated African-American and Native American farmers," and that as a result, female claimants were thus "unable to compete for a benefit offered by the government on equal footing with other groups," thus depriving them of equal protection and due process. The <u>Love</u> court dismissed these claims and that ruling was not appealed. <u>See</u> Order, <u>Love v. Vilsack</u>, No. 00-02502 (D.D.C. Dec. 11, 2012). Furthermore, several Hispanic farmers brought an action also challenging the terms of the administrative claims program. <u>See</u> <u>Cantu v. United States</u>, No. 11-541 (D.D.C.). The district court initially granted the Government's motion to dismiss that action, but its ruling was reversed on appeal. <u>See</u> <u>Cantu</u>, 565 F. App'x at 10. A renewed motion to dismiss is currently pending. <u>See</u> <u>Cantu</u>, No. 11-541 (D.D.C. Nov. 25, 2014).

<u>Plaintiffs' Complaint</u>

With the exception of paragraphs 4 through 10 of the complaint herein, in which plaintiffs relate their own personal experiences in being denied consideration for farm loans from the USDA, plaintiffs' complaint in this cause is taken verbatim from

4

the Love complaint. In paragraphs 4 through 10, plaintiffs allege that at various times during the 1980s and/or 1990s, each of them went to the local FmHA office to inquire about obtaining a farm loan from the USDA. Deering sought a loan in 1983; Burks in 1993; Williams in March 1994; and Warnsley in April 1997. According to the complaint, each plaintiff "was denied a loan, without even having the opportunity to fill out the necessary paperwork," and none was given any reason for the denial. Repeating the allegations of the Love case, plaintiffs allege in Count II that they were denied consideration for loans on account of their gender, in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a). Further, in Counts III through V, plaintiffs allege that the claims administration program the USDA established for female farmers is itself discriminatory as the terms offered to female farmers claiming discriminatory lending are less favorable than the terms offered to African-American and Native-American farmers, in violation of plaintiffs' equal protection and due process rights and in violation of the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*.

The Government's Motion

The Government has moved to dismiss plaintiffs' lending discrimination claims pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction over the claims because they are time-barred. It contends,

alternatively, that dismissal of these claims is in order pursuant to Rule 12(b)(6) based on the untimeliness of the claims. In the further alternative, it seeks dismissal of the lending discrimination claims pursuant to Rule 12(b)(6) on the basis that there is nothing in plaintiffs' allegations suggesting a plausible basis for the allegation that their efforts to apply for farm loans were rebuffed because of their gender.  The Government has also moved to dismiss plaintiffs' claims of discrimination relating to the USDA's claims resolution program on various grounds.  For the reasons that follow, the court concludes that plaintiffs have failed to assert a timely complaint of lending discrimination and this claim will therefore be dismissed.  From this, it follows that they have no standing to challenge the terms of the USDA's claims resolution program for female farmers, so that their claim of settlement discrimination will also be dismissed.

    Lending Discrimination

    The ECOA creates a private right of action against a creditor, including the United States, 15 U.S.C. § 1691e(a), who 'discriminates against any applicant, with respect to any aspect of a credit transaction' 'on the basis of race, color, religion, national origin, sex or marital status, or age' or 'because the applicant has in good faith exercised any right under this

chapter.'"  Garcia v. Johanns, 444 F.3d 625, 629 n.4 (D.C. Cir. 2006) (quoting 15 U.S.C. § 1691(a)).  See also 12 C.F.R. § 202.2(m) (defining "credit transactions" to include "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures").  "The ECOA thus waived the sovereign immunity of the United States, permitting suits against the Government for discrimination in the provision of credit."  Ordille v. U.S., 216 Fed. App'x 160, 164 (3d Cir. 2007).

At the time plaintiffs' claims accrued, the ECOA provided a two-year statute of limitations.  See 15 U.S.C. § 1691e(f) ("[N]o such action shall be brought later than two years from the date of the occurrence of the violation ....").[2]  Plaintiffs did not file this lawsuit until June 2015, obviously well over two years after

---

[2] Effective July 11, 2011, Congress extended the limitations period for ECOA claims from two years to five years. See 15 U.S.C. § 1691e(f).  That amendment does not alter the limitations period for claims that had expired before that date. See Walton v. Wells Fargo Bank, NA, Civil Action No. AW-13-428, 2013 WL 3177888 at *5 (D. Md. June 21, 2013) ("As a general principle, claims that would have expired under the previous two-year statute of limitations cannot retroactively be revived.") (citation omitted).

7

the dates of the credit transactions which plaintiffs challenge as discriminatory, which dates range from 1983 to April 1997. Thus, if plaintiffs' claims were subject to that two-year limitations period, they would clearly be barred. However, in 1998, Congress enacted The Omnibus Consolidated & Emergency Supplemental Appropriations Act, 1999, Pub.L. No. 105–277, § 741, 112 Stat. 2681 (October 21, 1998), codified at 7 U.S.C. § 2279 note, known as "Section 741," which retroactively extended the statute of limitations period to October 21, 2000 if certain requirements are met. <u>Chiang v. Schafer</u>, No. CIV. A. 2000-04, 2008 WL 3925260, at *9-10 (D.V.I. Aug. 20, 2008) <u>aff'd sub nom</u>. <u>Virgin Island Class Plaintiffs v. Vilsack</u>, 362 F. App'x 252 (3d Cir. 2010); <u>Ordille</u>, 216 Fed. App'x at 164. Section 741 states, in relevant part, as follows:

> (a) To the extent permitted by the Constitution, any civil action to obtain relief with respect to the discrimination alleged in an eligible complaint, if commenced not later than 2 years after the date of the enactment of this Act [Oct. 21, 1998], shall not be barred by the statute of limitations.
>
> (b) The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such complaint was filed not later than 2 years after the date of enactment of this Act [Oct. 21, 1998].

Pub. L. 105-277, Title VII § 741(a), 112 Stat. 2681-30 (reprinted in 7 U.S.C. § 2279 notes).[3] The filing of the class action complaint in Love on October 19, 2000 operated to toll the running of the limitations period (as to any claims which at that time could have been timely filed); and, in its order denying class certification, the Love court ordered that the limitations period would be further stayed for female farmers who would have been putative class members. That stay remained in effect until June 8, 2015. The present action was filed June 5, 2015, three days

---

[3] As the court explained in Ordille v. United States,
Section 741 ... was enacted in response to the pleas of
African-American farmers who had suffered years of
racial discrimination in USDA programs, but, because of
a history of inefficiency in the handling of
discrimination complaints by the USDA, were unable to
assert their discrimination claims in court pursuant to
the ECOA. See Pigford v. Glickman, 206 F.3d 1212, 1215
(D.C. Cir. 2000). The USDA has explained that, during
the 1980s and 1990s, inefficiencies in its review of
civil rights complaints led to the expiration of the
statute of limitations on claims which had been brought
administratively within the USDA before the USDA made a
determination of those claims. See 63 F.R. 67392
(codified at 7 C.F.R. Part 15f). The Secretary of the
USDA, therefore, "sought the enactment of legislation to
waive the applicable statutes of limitations for those
individuals who had filed nonemployment related
discrimination complaints with USDA alleging
discrimination during that time period." Id. Section
741 retroactively extended "the limitations period for
individuals who had filed administrative complaints with
the USDA between January 1, 1981, and July 1, 1997 for
alleged acts of discrimination occurring between January
1, 1981 and December 31, 1996." Garcia, 444 F.3d at 629
n.4 (citing Pub.L. No. 105-277, Title VII § 741, 112
Stat. 2681).
216 F. App'x 160, 165 (3d Cir. 2007).

before the stay was lifted. Therefore, if plaintiffs in this case had filed "eligible complaints" of discrimination, Section 741 would have extended the ECOA statute of limitations as to the violations of ECOA alleged by plaintiffs, and plaintiffs' complaint would be timely brought. See Chiang, 2008 WL 3925260, at *9. However, plaintiffs have not alleged, or undertaken to prove, that any of them filed an "eligible complaint" within the contemplation of Section 741.[4]

---

[4] The Government contends the requirements of Section 741 are jurisdictional so that its motion is properly brought under Rule 12(b)(1). It further asserts, though, that even if the requirements are not jurisdictional, plaintiffs' lending discrimination claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim. Of course, on a motion to dismiss under Rule 12(b)(6), the court may consider only the allegations of the complaint, while on issues involving jurisdiction, i.e., on a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings and resolve factual disputes. In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liab., 773 F.3d 596, 601 (5th Cir. 2014). A review of cases reflects a lack of consensus as to whether the Section 741 requirements are jurisdictional. The only circuit court that has directly addressed the issue has held that "the eligibility requirements of Section 741 create a jurisdictional prerequisite to the waiver of sovereign immunity contained in the ECOA". Ordille v. United States, 216 F. App'x 160, 167 (3d Cir. 2007). A number of district courts have held otherwise. See Thiel v. Veneman, 859 F. Supp. 2d 1182, 1196 (D. Mont. 2012) (finding that the defendants should have presented ECOA limitations under Rule 12(b)(6) rather than Rule 12(b)(1) since the ECOA's statute of limitations is not jurisdictional); Benoit v. U.S. Dep't of Agric., 577 F. Supp. 2d 12, 21 (D.D.C. 2008), aff'd, 608 F.3d 17 (D.C. Cir. 2010) (finding that "while Section 741 specifies, as a prerequisite to its application, the existence of a particular fact-namely, the filing of an eligible complaint—the existence or non-existence of that fact was not intended to have jurisdictional significance") (internal quotation marks and citation omitted);

Section 741 only applies to situations in which an "eligible complaint" of discrimination was filed with the USDA prior to July 1, 1997 for alleged acts of discrimination occurring between January 1, 1981 and December 31, 1996 in the administration of, *inter alia*, a farm loan program.  See Garcia v. Johanns, 444 F.3d 625, 629 n. 4 (citing Section 741(e)); Chiang, 2008 WL 3925260, at *9.  To qualify as an eligible complaint, the complaint must have been in writing and have been unrelated to employment.  See 7 C.F.R. § 15f.4.  Plaintiffs' complaint does recite that plaintiffs "timely complained about USDA's actions."  However, as the Government correctly argues, this allegation is conclusory and insufficient to prevent dismissal.  See Jones v. Alcoa, Inc., 339 F.3d 359, 362 (5th Cir. 2003) (holding that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")

---

Williams v. Conner, 522 F. Supp. 2d 92, 99 (D.D.C. 2007) (holding that "[b]ecause the ECOA statute of limitations is not a condition on the government's waiver of sovereign immunity, the failure to comply with the statute of limitations is not a jurisdictional failing.").  The court need not resolve the issue for purposes of the present motion, however.  Plaintiffs' complaint appears on its face to be time-barred; and plaintiffs have not alleged that they filed an eligible complaint or alleged facts from which one could infer that they did so.  They have thus failed to state a claim for relief.  See Thompson v. Deutsche Bank Nat'l Trust Co., 775 F.3d 298, 307 (5th Cir. 2014) (finding that complaint was properly dismissed for failure to state a claim on statute of limitations grounds).

(citation omitted).  As the Government notes, plaintiffs' allegation "offers no detail whatsoever and provides no indication that plaintiffs satisfied the criteria for the limited extension of the statute of limitations" provided by Section 741; or put another way, plaintiffs do not allege that they filed an "eligible complaint" with the USDA or allege facts that, if true, would indicate that they ever filed an "eligible complaint" with the USDA.

    As their apparent response to the Government's statute of limitations argument, plaintiffs merely declare that they "attempted to file a claim with the Black [sic] Farmers Settlement Litigation"; that their claims were "not adjudicated or determined by the members of the Black [sic] Farmers Settlement Litigation, and [that they were] out of time to file a claim" and so they pursued "their only option which was to file suit prior to the Statute of Limitations expiring."  In support of this argument, plaintiffs have submitted copies of claim forms purportedly submitted by Willie Deering in 2013 on behalf of the Estates of Katrina Warnsley, Loretta Warnsley Williams and Annie Warnsley-Bester as part of the USDA Hispanic & Women Farmers and Ranchers Administrative Dispute Resolution program.  Clearly, however, plaintiffs' attempt to participate in the administrative claims resolution program – which did not even exist until 2010 – could not have revived an already-expired lending discrimination claim.

Neither in the complaint, nor in their response, do plaintiffs allege or claim that they ever filed an "eligible complaint" under Section 741. It appears, therefore, that their claims for lending discrimination under the ECOA is time-barred and for that reason, this claim will be dismissed.

Settlement Discrimination

The Government points out that in order to challenge the USDA's administrative claims procedures for female farmers, plaintiffs must demonstrate that they have standing to do so. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) ("Plaintiffs, as the parties invoking jurisdiction, bear the burden of demonstrating that the requirements for standing are satisfied."). "To have standing to sue, the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 396 (5th Cir. 2015) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). Here, the Government argues that plaintiffs have not alleged and cannot establish standing because, among other reasons, they do not allege, and cannot establish, that they were injured by any alleged difference between the USDA's administrative claims program for female farmers and the class settlements in Pigford and Keepseagle because they do not allege

13

and cannot show that they were eligible for recovery under any of these programs. The Government's argument appears meritorious; and plaintiffs do not even address, much less challenge, the Government's contention that they lack standing to pursue their claims for settlement discrimination. Accordingly, these claims will be dismissed.

Conclusion

Based on the foregoing, it is ordered that the Government's motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 21st day of January, 2016.

                                            /s/Tom S. Lee
                                            UNITED STATES DISTRICT JUDGE